All rise. This court is now in session.  Please proceed. Good morning. May it please the court. My name is Brian Seckler and I'm here on behalf of the appellant, Hannah Buchanan. This is a rather complicated case that can be broken down into three main areas. First would be whether the dismissal order entered in case 11F369 that was filed by the child's guardian or child representative was whether it's a voluntary dismissal or a dismissal under 2615 or 2619 of the Code of Elements of the Procedure. The next issue would be whether Mr. Legan made a judicial admission in that case or if he consented to the refiling of the petition in case number 16F40. And finally, whether the trial court erred in relying on precedents of Rain, Illinois Supreme Court precedents of Rain, Hudson, and Griesmeier. It would be Hannah's position that the court did err in relying on those precedents. Turning to the first issue is whether the motion to dismiss filed by the child representative in 11F369 was a voluntary dismissal. The motion to dismiss did not state whether it was pursuant to 2615 or 2619. And the Illinois Supreme Court has stated when a motion to dismiss is silent as to 2615 or 2619, the reviewing courts will typically review according to the grounds, its requests, or its treatment by the parties in the trial court. Well, if we look at that order, the child representative asked to dismiss based on one of the grounds that Hannah would be able to refile when she was 18 years old. The trial court, in reviewing the transcript, granted the dismissal as a voluntary dismissal. One of his comments was, the movement can dismiss for no other reason than a change of mind. The trial court in 11F369 didn't decide on best interest grounds. It decided it on a voluntary dismissal. The parties also treated it as a voluntary dismissal. Mr. Ligon, in his reply to the memorandum concerning the child representative's representation of the child, clearly stated that the child should be afforded the opportunity to refile when she turned 18. The case, the Peoria County case 16F40, was that planned refiling? Turning to one of the next issues is whether the child representative could involuntarily dismiss a petition filed on behalf of the child. I believe this would be a case of first impression on that issue. Nowhere else would an attorney involuntarily dismiss a petition filed on behalf of their client. The dismissal failed to state whether relief could be granted based on the allegations in the complaint, which would fall under 2615. It failed to state whether there was no affirmative defense under 2619. The trial court in 11F369 clearly ruled that Hannah was the movement through her child represented. We would argue that the trial court in 16F40 also erred in relying on the Hudson and Rain decisions of the Illinois Supreme Court. These cases involved claim splitting, rather than... So there were multiple actions that were possibly pending, and in the instant case, that's just not how it went. There was one action, and it was an action to determine the existence of a father and child relationship. Mr. Ligon argued that it was basically two actions, not only a petition to determine the existence of a father and child relationship, but also under Section 205 of the current Parenthood Act, a petition to declare the nonexistence of a parent-child relationship. They're two separate actions, and Hannah was moving forward on a petition to establish the parent-child relationship, rather than to disestablish the parent-child relationship. And the second district in the case of NRAGM looked at the differing statutes, the different sections of the statute, and determined that these were separate causes of action. In one, as evidenced by the statute's sections dealing with standing, a child has standing to bring a petition at any point within two years of attaining the age of majority, while a parent would be limited up until the age of 18. Hannah attained the age of 18, brought the petition on her own, and the trial court dismissed on the grounds that it was barred by race judicata. For race judicata to attach, there would need to be an identity of the parties or their privies, which we certainly have in this case, an identity of the cause of action, which we certainly have in this case, and a judgment on the merits. And when we get to the judgment on the merits, a voluntary dismissal is not a judgment on the merits. So the court erred in determining that that dismissal order in 11F369 was a judgment on the merits. The order was silent as to its basis for dismissal. However, if we look at what the Supreme Court precedent, what the Supreme Court precedent directs us to review in determining whether the dismissal would be 615 or 619, in this case it's quite clear that the parties intended this to be a voluntary dismissal. Mr. Ligon argued that he did not make a judicial admission in his reply brief, but under this court's precedent in Shelton v. OSF, for a judicial admission it needs to be deliberate, clear, unequivocal statements by a party about a concrete fact within the party's knowledge. Michael's position that Hannah should be afforded the right to refile upon attaining the age of 18 would seem to fall within a deliberate, clear, unequivocal statement by a party about a concrete fact, whether or not Hannah should be afforded the opportunity to refile. Going back to res judicata, one of the considerations is whether the party seeking the protection of the right to refile under the doctrine of res judicata, they bear a substantial burden. And in 11F369, Mr. Ligon failed to move to dismiss. He joined the child representative's motion and the trial court in that case granted the motion of the child representative, but on the grounds of voluntary dismissal. If the child representative moved to involuntarily dismiss the petition filed on behalf of the child, we get into an area where it's uncharted territory. The child wouldn't have the right to later bring a case when the statute clearly allows her to do that, under the standing sections as well as under the limitations. If there are no more questions, I will reserve the remaining time for rebuttal. May it please the court, my name is Susan Butler, and I represent Appali Michael Ligon. My job today is to provide you with a rationale for affirming the decision of Judge Wilson, and I'm pleased to say that I believe there's a simple and straightforward path for you to do so. Judge Wilson ruled that res judicata bars Hannah Buchanan's attempt to relitigate the issue of Michael Ligon's alleged parentage. Appellant has conceded the two grounds or elements of res judicata, so the only issue here is whether there was an adjudication on the merits in the underlying case, which we refer to as Buchanan 3. Yes, it's a 2011 case. That's fine, that's good enough. Yes, I think, and it's 369. Hannah Buchanan was represented in that case by a guardian ad litem and a child representative. So here is your straightforward path to affirm. In Buchanan 3, Hannah's mother, Susan Buchanan, filed a petition to determine the existence of the father-child relationship, the nonexistence of the father-child relationship, and child-related issues. She sought to disestablish the previously adjudicated parentage of her ex-husband, James Buchanan, and she sought to establish a new father in the person of Michael Ligon. Much of the case in Buchanan 3 involved the guardian ad litem and the child representative investigating and establishing that there was an intense conflict between Susan Buchanan, the mother, and Hannah Buchanan, the daughter, because Susan was trying to take away the father loved and adored by Hannah for all of her 15 years at that time. In that context, the child representative filed a motion to dismiss, alleging that the petition was barred by the statute of limitations. The trial court granted that motion to dismiss. Supreme Court Rule 273 provides that an involuntary dismissal of an action other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party operates as an adjudication on the merits. Thus, there was an adjudication on the merits in that case. The other two elements of res judicata conceivably exist, so Judge Wilson was correct in finding that res judicata bars the attempted relitigation of Michael Ligon's heritage by Hannah. Recall that res judicata extends to matters actually decided in the first action and those which could have been decided in that action. And that case was a petition to disestablish James Buchanan to establish Michael Ligon. So clearly, what Hannah seeks to litigate here could have been decided in the case that was dismissed. Under the Parentage Act of 1984, which is what we were operating under at that time, any action to declare the existence or non-existence of a parent-child relationship had to be brought in the name of the child by a guardian, parent, guardian ad litem, or custodian. The action could not be brought in the child's name. Alternatively, the child could... Under the Parentage Act of 1984, any action to declare the existence or the non-existence of a parent-child relationship had to be brought by a guardian, parent, GAL, or custodian. The action could not be brought in the child's own name. An alternative to that under the Parentage Act of 1984 was that the minor could wait until she attained age 18 and then bring the action prior to her 20th birthday. But that alternative was not chosen here. That is not what happened here. We had action here. We had action by the mother, Susan Buchanan, who chose to file a petition to disestablish her adjudicated ex-husband's parentage and to establish parentage in a new person. In 2011. Yes. And what's really important for you to remember as you're considering this is that Hannah Buchanan participated in that Buchanan 3 case. She was extensively interviewed by the guardian ad litem and by the child representative. She was represented by both a guardian ad litem and a child representative. But that action was, I think, very clearly involuntarily, not voluntarily dismissed. It was dismissed pursuant to the language of the child representative's motion to dismiss, which clearly was brought and stated that the action should be dismissed because it was barred by the statute of limitations. That's a 619 involuntary dismissal. And there was no appeal of that case. Appellant complains that the trial judge did not specifically state in the dismissal order that the basis for the dismissal was the statute of limitations bar or a bar under 619 under some other affirmative matter. We all know that you may affirm on any proper basis in the record and it's abundantly clear when you read the motion that it was brought under 619 even though it didn't state that it was brought under 619. Alleging that the case was barred by the statute of limitations. Counsel talked about a duty to make the... That 2011 petition was filed by Mother. By Mother.  Correct. So it was her case to dismiss. It was her case to dismiss. Further... That attorney filed a motion to dismiss on grounds stated in the motion. But would that attorney have the ability to voluntarily dismiss a case brought by Mother? No. And I think that proves my point that the person who was in a position to voluntarily dismiss this case was the person who brought it, Susan Buchanan. This was clearly an adversarial involuntary dismissal on the part of the child representative. As I said, it had been established that there was an intense conflict between Mother and Daughter at that time. In no way did Susan Buchanan want her petition to be dismissed. So I think clearly given the grounds and the context in which the motion to dismiss was filed, it was an involuntary dismissal. So with regard to this issue that it's incumbent upon us to make sure that the order is reflective of what happened, I think it clearly was. Let's look at the motion to dismiss, who brought it, and the order granting it. On its face, the motion to dismiss stated that it was being brought because the statute of limitations barred this action. So even though the child representative didn't cite section 619, it was clear that this was a motion calling for an involuntary dismissal. And who brought it? It was brought by a child representative representing a child whose interest had been determined by the trial judge to be divergent from and in an intense conflict with her mother. So in that context, when the order just simply granted the motion to dismiss, we can take all that in the context and assume, and I think rightly so, that there was no doubt this was an involuntary dismissal. The order did not say there was any right to refile. It didn't say anything about any additional action. The case was merely dismissed, and there was no appeal. When we left the courtroom that day, there was nothing, no stipulation, no agreement, no court order stating anything about anybody's right to refile. There had been gratuitous comments on the part of the child representative to the effect that Hannah would have the opportunity to refile. She also stated clearly of record Hannah would not have the opportunity to file in the future to try to disestablish the parentage of her adjudicated father. What was James' role in the 2011 case? Did he also move to involuntarily dismiss the case? James never filed anything other than an entry of appearance. Is there any indication in any of these records that James does not want to be her father? No. If you will read the report of the guardian ad litem, which appears in full appendix to our brief, James Buchanan was interviewed by the guardian ad litem. He told of his strong, deep love and bond with his daughter. He talked that he would never do anything to destroy that father-daughter relationship with her. I'll read it. It's reminiscent of a case that we decided some time ago called NREGEM. The situation was reversed in that case where a natural father wanted to disestablish the man who had raised a child contrary to the child's wishes. I don't know if you've read that case. I have. It's reminiscent of that. I think GEM involved a VAP, Voluntary Acknowledgement. And this is an adjudication by a dissolution. And James has, I presume, paid support? Yes. He has had visitation, is not wanting to have his paternity disestablished, and has stood quietly by. Whereas Mr. Ligon is not interested like the biological father in GEM who was asserting his DNA rights, I call them. Yes. But there is some public policy here in case law that says you really only can have one father and DNA does not a father make. Yes. And along those lines, I think policy considerations about how important it is to have finality and stability in these judgments. What GEM stands for is that you don't get to pick door number one, door number two, or door number three. Based on the financial resume of those behind each door. So your position is race judicata controls? Absolutely. The dismissal was involuntary pursuant to 619 statute of limitations bar that all the elements of race judicata exist. I'd like to touch, if I could, on the contention that in a reply pleading of ours in the prior case, thank you, that there was a judicial admission that Hannah would be entitled to refile. That is absolutely not the case. First of all, I'd like you to know that that document, that reply document that supposedly contains an agreement or something that Hannah can be refiled is not a record before you. There was no supplement, no motion to supplement the record file by appellant to bring that document into this record. It appears in appendix, actually it's not in appendix one. I'm watching the appendix of the appellant. But it's not a record in the trial court here. It's in record in Buchanan three and it has not, the record here has not been supplemented with that document. So I don't think you should be able to rely on it. But even if it were properly before you, a judicial admission goes to a fact. And a gratuitous comment by counsel in an argument isn't, and not based upon a fact, is not a judicial admission. We did not expressly consent, we never signed any document agreeing to the refiling. There certainly was never an understanding on the part of a child representative of refiling because she on the record did not agree to the refiling. And I think in my brief I fully cover that and believe my position on that is accurate. Thank you. Any questions? Thank you. There was a question about what James' thoughts were at the trial level. And we submitted a transcript of the hearing on July 25, 2012, an 11 of 369. And James' exact comments were, the only other thing I would add, you know, was talking about best interest for Hannah. Who is to say if it gets squashed and Mike is determined not to be in her life, not to be her father or anything, destroying that possible potential relationship is something I don't want. I mean, who is to say if that happens, you know, that could end the relationship forever without there ever being a chance to establish one? I think that if it's really in her best interest, she wants to have a relationship with him. And I certainly wouldn't want to try to stop it. I think they should have a relationship if that's the case, but that's all I wanted to add. Your point being? My point being that Mr. Buchanan was open to a relationship, Hannah having a relationship with Mr. Buchanan. Let me ask a follow-up question for that, because I know you believe that was a relevant quote. In existing, and you mentioned this is a case of first impression, in Illinois case law, is there any case where a child gets to disestablish a parent who has not been accused of any abuse or neglect? And that quote that you have just read me tells me how lucky she was to have James Buchanan in her life, because that makes it clear that the man who raised her is saying maybe he would be a better dad. So tell me if there's any existing case law that establishes a child has the right to choose absent an allegation of abuse or neglect to end a parental relationship. No, Your Honor, there is not. But you're asking us to do that, aren't you? I'm asking for Hannah to have the opportunity that she's presented under the statute. That opportunity exists informally between several different courts. But you are asking us to take the parental rights, and this can go far. You know, I think about the slippery slope of adoptive parents who have done nothing wrong. But a biological parent, as I said, DNA does not a father or mother make, who might have more income. You know, a child or a parent may down the line prefer to have a legal relationship with that person. And I just don't, I think that's a very slippery slope. Well, I think that the situation here is different. James was adjudicated to be Hannah's father as part of the divorce case between James Buchanan and Hannah Buchanan in 1999. However... Has there been a petition to set aside that adjudication as void based on fraud or misrepresentation? Well, no. But under the Illinois Supreme Court precedent in Simcox, children are not privies to their parents. Hannah wasn't represented by a guardian ad litem or a child representative as part of that determination, that adjudication of parentage. The petition that was brought in 11-F-369, while it was brought by Susan Buchanan, it was brought on Hannah Buchanan's behalf. The court appointed a child representative as well as a guardian ad litem to ensure that Hannah's interests were protected. At that point, the trial court at 11-F-369 treated the petition as Hannah's petition. And when he dismissed it, he dismissed it as being dismissed by Hannah's counsel. Counsel's made a number of comments that there was an intense conflict between Hannah and her mother, Susan Buchanan. I think you made the point earlier, your best argument is that was a petition to establish paternity, not to de-establish paternity. And so the option of de-establishing paternity was not litigated by dismissing the petition. It was a petition to establish paternity. They're different. Counsel has one minute. At what point can you willy-nilly adopt an adult? No, Your Honor. There's a whole process that you go through with adopting an adult. Just the same as there would be a process that you would go through with adopting a child. I think there are a few less hurdles in adopting an adult, but there are procedural safeguards that are in place to ensure that that's the correct thing to do. The facts of this case, you know, you could teach a law school course on it. You really could. It could be a hypothetical question for a bar exam. There's so many issues involved here, whether paternity, there's just so many issues. Whether if the door closes here or other doors open based on other causes of action. We have to focus on de-establishing paternity or establishing paternity only. Not any separate contract actions. Sure. So under GM, what the second district said is one parent will naturally be de-established if another parent is established. And it couldn't have been the legislative intent to bar a child from bringing an action when they're listed as a party that has standing to bring such an action. So Hanna is trying to figure out who she is. And it's been after a number of years. When the case was dismissed in 11F369, I'll go back to the trial court treated it as a voluntary dismissal, such that race judicata shouldn't apply. This new case, 16F40, should go forward. When was Hanna when that was filed? She was age 12 when it was filed. I'm sorry, excuse me. When the 16F case, she was 18 turning 19, I believe. Was there a statute of limitations difficulty with that? No, there wasn't, because as a child she has the standing with it. Well, under the Act of 1984, she had standing within two years of her 18th birthday. Under the current statute, the statute of limitations, because it is a petition to establish rather than de-establish, there isn't a statute of limitations issue. If it were a petition to de-establish under Section 205, at her 18th birthday, it serves as a limitation factor. So would you agree, and please don't concede unless you want to, would you agree that a petition to de-establish is time-barred? I would agree that a petition to de-establish would be time-barred. But a petition to establish would not. Which is why I said time-barred is your best argument. Well, we would ask that the court remand and send this case back to the trial court for further DNA testing. There has been no DNA testing at this point? No, in 11F369, we never got there. We never got to a best interest determination either. It was all motion practice. Oh, and everybody is afraid to do it, to tell Hannah who she is because of the ramifications. Yes. So, if there is nothing further, thank you for your time. Thank you.